IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA

Case No. 24-60040-CIV-LEIBOWITZ/Hunt

SOUTHERN CROSS SEAFOODS, LLC,

    Plaintiff,

v.

UNITED STATES, *et al.*,

    Defendants.

**DEFENDANTS' STATEMENT OF MATERIAL FACTS**

Pursuant to Local Rule 56.1, Defendants the United States and the National Marine Fisheries Service (collectively, "NMFS") submit the following statement of material facts in support of their motion for summary judgment, D.E. 75.

**Prefatory Note**

Each of Plaintiff's claims seeks judicial review of agency action pursuant to the Administrative Procedure Act ("APA"), 5 U.S.C. § 706. In an APA case, "[t]he factfinding capacity of the district court is thus typically unnecessary." *Pres. the Endangered Areas of Cobb's History, Inc. v. U.S. Army Corps of Eng'rs*, 87 F.3d 1242, 1246 (11th Cir. 1996) (internal quotation marks and citation omitted). Instead, "the district judge sits as an appellate tribunal." *Rolling Meadow Ranch Groves, LLC v. U.S. Dep't of Agric.*, 682 F. Supp. 3d 1253, 1257 (S.D. Fla. 2023) (citation omitted). Thus, the "facts" necessary for resolution of the claim against NMFS are set forth in the administrative record rather than "some new record made initially in the reviewing court." *Camp v. Pitts*, 411 U.S. 138, 142 (1973). Accordingly, NMFS's proposed findings of fact are drawn from its administrative record and represent NMFS's summary and characterization of materials in the record and the history of the Convention on the Conservation of Antarctic Marine Living Resources.

**The Convention on the Conservation of Antarctic Marine Living Resources and the Commission for the Conservation of Antarctic Marine Living Resources**

  1.  The Convention is an international treaty which was signed on May 20, 1980, and entered into force on April 7, 1982. 33 UST 3476.

1

2. The Convention established the Commission for the Conservation of Antarctic Marine Living Resources ("Commission" or "CCAMLR")—to carry out the Convention's conservation objective and principles by adopting legally binding conservation measures by consensus during its annual meetings, among other duties. *Id.*; AR000083.

3. Today, there are 37 Contracting Parties to the Convention; 26 States and the European Union are Members of the Commission. 33 UST 3476. The United States is a Contracting Party to the Convention and a Member of the Commission. *See id*.

4. A Contracting Party is a State (i.e., a nation-state) or a "regional economic integration organization" that "has committed to the Convention through ratification, acceptance, approval[,] or accession. Members include those Contracting Parties that participated in the first meeting at which the Convention was adopted in 1980, as well as States that have subsequently acceded to the Convention and been accepted as Members by the Commission." CCAMLR, Status of the Convention, https://www.ccamlr.org/en/organisation/status-list-contracting-parties (last visited June 14, 2024).

**Conservation Measures**

5. Statistical Subarea 48.3 ("Subarea 48.3") encompasses waters in the South Atlantic Ocean within the Convention area and around South Georgia. *See* CCAMLR, Map of the CAMLR Convention Area, Oct. 2017, https://www.ccamlr.org/en/system/files/CCAMLR-Convention-Area-Map.pdf (last visited June 14, 2024).

6. At the Fifth Meeting of the Commission in 1986, the Commission had a "divergence in views . . . over limitations of catch in Subarea 48.3." CCAMLR, Report of the Fifth Meeting of the Commission ("Fifth Meeting Report"), 1986, ¶ 51, https://meetings.ccamlr.org/system/files/e-cc-v.pdf (last visited June 14, 2024); *see also* AR000084 n.5 (citing Fifth Meeting Report at 16). While some Members believed that limits set at the amount of catch for the 1985/86 season were appropriate for the 1986/87 season, others viewed those levels as "inconsistent with the advice of the Scientific Committee" on the need for measures to promote recovery of depleted fish stocks. Fifth Meeting Report ¶ 51. Although "the Commission could not reach agreement on a limitation of catch for Subarea 48.3," the Members of the Commission "agreed that such limitations of catch or equivalent measures should be established for the 1987–88 season, at next year's annual meeting, when data resulting from planned fishery surveys in the area would be available." *Id.* ¶ 52.

7. At the Fifth Meeting, CCAMLR adopted CM 7/V, now categorized as CM 31-01. AR000084. CM 31-01 (1986) reads:

> Without prejudice to other conservation measures adopted by the Commission, for species upon which fisheries are permitted around South Georgia (Statistical Subarea 48.3), the Commission shall, at its 1987 Meeting, adopt limitations on catch, or equivalent measures, binding for the 1987/88 season.
>
> Such limitations of catch or equivalent measures shall be based upon the advice of the Scientific Committee, taking into account any data resulting from fishery surveys around South Georgia.
>
> For each fishing season after 1987/88, the Commission shall establish such limitations or other measures, as necessary, around South Georgia on a similar basis at the meeting of the Commission immediately preceding that season.

Fifth Meeting Report ¶¶ 48 (adopting CM 7/V "in accordance with Article IX of the Convention"), 53.

8. At the Ninth Meeting of the Commission in October 1990, CCAMLR adopted the first catch limit for toothfish (*Dissostichus eleginoides*) in Subarea 48.3, which was in effect for the 1990/91 season. *See* CM 24/IX (1990).

9. Until 2021, at annual meetings, CCAMLR generally endorsed the advice of the Scientific Committee on a catch limit for the toothfish fishery in Subarea 48.3 and adopted, by consensus, CM 41-02 containing the catch limits and other regulatory measures (such as gear restrictions, bycatch limitations, and bycatch mitigation, observer, and reporting requirements) for that fishery. AR000084; *see also, e.g.*, CCAMLR, Report of the Thirty-Eighth Meeting of the Commission, 2019, ¶ 9.13, https://www.ccamlr.org/en/system/files/e-cc-38_0.pdf (last visited June 14, 2024); CCAMLR, Report of the Thirty-Sixth Meeting of the Commission, 2017, ¶ 8.15, https://meetings.ccamlr.org/system/files/e-cc-xxxvi_1.pdf (last visited June 14, 2024).

10. CM 41-02 was in effect until and through the 2019/20 and 2020/21 fishing seasons. *See* CM 41-02 (2019).

11. To inhibit trade of illegal catches, CCAMLR adopted CM 10-05, which established a Catch Documentation Scheme ("CDS") for CCAMLR members and other participating States to track toothfish from harvest through the trade cycle, including transshipment, landing, import, export, and re-export, no matter where the fish were harvested. *See* CM 170/XVIII (1999); CM 170/XIX (2000); CM 170/XX (2001); CM 10-05 (2002–2022).

3

12. In 1998, the Commission adopted CM 32-02 to prohibit directed fishing for finfish in Subarea 48.1. *See* CM 32-02 (1998).

13. The Commission later adopted a revised CM 32-02 that consolidated prohibitions on directed fishing contained in 15 other conservation measures. *See* CCAMLR, Report of the Thirty-First Meeting of the Commission, 2012, ¶ 7.22, https://meetings.ccamlr.org/system/files/e-cc-xxxi.pdf (last visited June 14, 2024); *see also* CM 32-02 (2012); CM 32-02 (2017).

14. CM 41-02 has included a catch limit of zero for toothfish in one portion of Subarea 48.3—Management Area A— since 2004. *See* CM 41-02 (2004–2019).

### CCAMLR's Failure to Adopt Proposed Catch Limits for Toothfish in Subarea 48.3 for the 2021/22 Fishing Season

15. At its Fortieth Meeting in October 2021, CCAMLR failed to reach consensus on a conservation measure setting catch limits for the toothfish fishery in Subarea 48.3 for the 2021/22 fishing season after considering a proposed CM 41-02 containing catch limits and other measures. *See* CCAMLR, Report of the Fortieth Meeting of the Commission ("Fortieth Meeting Report"), 2021, ¶ 6.21, https://meetings.ccamlr.org/system/files/e-cc-40-rep.pdf (last visited June 14, 2024); AR000084 n.6 (citing Fortieth Meeting Report ¶¶ 6.18–6.22, 6.26–6.32, 6.35).

16. At the Fortieth Meeting, the Commission reviewed the Scientific Committee's advice regarding catch limits for the toothfish fishery in Subarea 48.3, which "[m]ost Members noted" was "based on the best available science." Fortieth Meeting Report ¶ 6.19; AR000084 n.6. "Many Members voiced their concerns at the unprecedented situation where for the first time the catch limit for an established fishery was blocked, and the Commission was not adhering to its commitment to utili[z]e the best scientific evidence available in its decisionmaking." Fortieth Meeting Report ¶ 6.20; AR000084 n.6.

17. Several Members also made statements at the Meeting conveying their concerns about the effect of the Commission's failure to adopt a catch limit on the toothfish fishery in Subarea 48.3 for the 2021/22 fishing season. Fortieth Meeting Report ¶¶ 6.22, 6.28, 6.30; AR000084 n.7 (quoting Fortieth Meeting Report ¶¶ 6.22, 6.28, 6.30).

18. The United Kingdom stated that "Russia's block on a scientifically determined catch limit for the toothfish fishery in Subarea 48.3, contrary to the management advice from the Scientific Committee . . . , marks the first time in CCAMLR's 40-year history that an established

fishery has been completely blocked, and it results in a failure of CM 31-01." Fortieth Meeting Report ¶ 6.22; AR000084 n.7 (quoting Fortieth Meeting Report ¶ 6.22).

19. The European Union stated that the proposed catch limits for toothfish in Subarea 48.3 were "based on [the] best available science and consistent with CCAMLR decision rules and established CCAMLR procedures," and that "there is no scientific basis for closing the fishery." Fortieth Meeting Report ¶ 6.28; AR000084 n.7 (quoting Fortieth Meeting Report ¶ 6.28).

20. The United States stated that "[t]he U.S.A. does not believe there is a scientific basis to close the toothfish fishery in Subarea 48.3" and advocated adopting the proposed catch limits for toothfish in Subarea 48.3 at the levels indicated in the Scientific Committee's report. Fortieth Meeting Report ¶ 6.30; AR000084 n.7 (quoting Fortieth Meeting Report ¶ 6.30).

**Plaintiff's Preapproval Application**

21. In August 2022, NMFS received an application from Plaintiff for a preapproval certificate to import frozen toothfish. *See* AR000056–60.

22. According to the *Dissostichus* Catch Document ("DCD") included in Plaintiff's application, the toothfish Plaintiff sought to import was caught in Subarea 48.3 in June and July 2022. AR000057.

**NMFS's Denial Letter**

23. In September 2022, NMFS denied Plaintiff's preapproval application. *See* AR000083–86 ("Denial Letter"); AR000020 (signed decision memorandum).

24. The Denial Letter discussed the history of CM 31-01. AR000084. NMFS added that "the Commission has adopted an ever-increasing suite of catch limits and other measures for [Subarea 48.3] each year from 1990 until last year, when Russia blocked consensus to adopt proposed CM 41-02." *Id*.

25. NMFS also addressed the United Kingdom's issuance of fishing licenses that authorize the harvest of toothfish in its claimed waters within Subarea 48.3. *Id*. NMFS stated that "[e]ven if the United Kingdom has unilaterally imposed comparable measures to those included in CM 41-02 in prior seasons, that is irrelevant to the question of whether prosecution of this fishery in the absence of a measure adopted by CCAMLR contravenes CM 31-01." *Id*.

26. The Denial Letter further explained that "[t]here is no basis for concluding that CCAMLR's failure to adopt CM 41-02 represents a decision by CCAMLR that catch limits and

5

other measures for Subarea 48.3 were unnecessary for the current season and, therefore, the fishery could proceed in the absence of such measures without contravening CM 31-01. Nor was such a conclusion supported by the discussions that were held in the Commission." *Id.*

27. "In fact," as NMFS pointed out in the Denial Letter, "several of the statements made in the Commission reflect the view that failure to reach consensus on catch limits effectively closes the fishery." *Id.*; *see also id.* n.7 (quoting statements from the United Kingdom, European Union, and United States included in the Fortieth Meeting Report ¶¶ 6.22, 6.28, 6.30).

28. The Denial Letter also found that "[a] conclusion that fishing could proceed in the absence of a measure would also be inconsistent with decades of CCAMLR practice." AR000084–85. Indeed, "the adoption of increasingly sophisticated fishery-specific measures has been consistent across CCAMLR fisheries." AR000085.

29. NMFS stated that "[s]ince 2004, directed fishing for toothfish has been prohibited in portions of Subarea 48.3 outside the United Kingdom's claimed [exclusive economic zone ("EEZ")], and Management Area A (which included areas inside and outside the claimed UK EEZ) was open to fishing, but with a zero catch limit." *Id.* Thus, if the absence of a catch limit meant that toothfish harvest in Subarea 48.3 complied with CM 31-01, then these portions of Subarea 48.3 "would also be open to harvest, a result that would be inconsistent with the Convention's conservation objective." *Id*.

30. The Denial Letter also explained that "[f]or the 2021/22 fishing season, CCAMLR failed to adopt catch limits or other measures as necessary in accordance with CM 31-01. Therefore, even if the toothfish at issue was harvested in compliance with other applicable conservation measures, . . . that does not make the harvest *authorized* in accordance with CM 31-01." *Id.*

31. NMFS also stated that "fisheries have not been prosecuted in the absence of applicable fishery-specific measures authorizing and proscribing the conditions of harvest since the earliest years of the Commission when the management regime was still being established." *Id.*

32. The Denial Letter also explained that, even though "directed fishing for toothfish in Subarea 48.3 is not prohibited by CM 32-02," the absence of a catch limit for toothfish in Subarea 48.3 does not mean that "the fishery is open without catch limits." *Id.* "CCAMLR has

6

adopted specific prohibitions on directed fishing or zero catch limits for certain portions of Subarea 48.3 since 2004, including each year since the adoption of CM 32-02, until [2021]." *Id.*

33. NMFS explained in the Denial Letter that NMFS was "not issuing a pre-approval certificate because . . . the toothfish at issue was harvested in contravention of CCAMLR CM 31-01. *See* 50 C.F.R. § 300.105(h)(2). In the absence of any measure affirmatively establishing a catch limit and other fishery-specific requirements for the current season, fishing in Subarea 48.3 was not authorized under CCAMLR conservation measures." AR000086.

Dated: June 14, 2024

Respectfully submitted,

TODD KIM, Assistant Attorney General
U.S. Department of Justice
Environment & Natural Resources Division
S. JAY GOVINDAN, Section Chief
MEREDITH L. FLAX, Deputy Section Chief

*/s/ Astrid Stuth Cevallos*
ASTRID STUTH CEVALLOS, Trial Attorney
FREDERICK H. TURNER, Senior Trial Attorney
Wildlife & Marine Resources Section
Benjamin Franklin Station, P.O. Box 7611
Washington, D.C. 20044-7611
Phone:  (202) 307-5751 (Cevallos)
         (202) 305-0641 (Turner)
Fax:    (202) 305-0275
Email:  Astrid.Cevallos@usdoj.gov
         Frederick.Turner@usdoj.gov

*Counsel for Defendants*