# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF FLORIDA

Case No. 24-60040-CIV-LEIBOWITZ/Hunt

SOUTHERN CROSS SEAFOODS, LLC,

    Plaintiff,

v.

UNITED STATES, *et al.*,

    Defendants.

**DEFENDANTS' SUPPLEMENTAL BRIEF**

The United States and the National Marine Fisheries Service ("NMFS") submit the following supplemental brief following the Court's hearing on the parties' cross-motions for summary judgment, which was held on March 17, 2025, in Fort Lauderdale. Defendants first address the applicable standard of review before turning to the jurisdictional issues of standing, mootness, and Plaintiff's request for declaratory relief.

I.  **The Applicable Standard of Review**

Because the applicable legal framework required NMFS to determine, based on the available information, whether Plaintiff's toothfish shipment was harvested in contravention of a binding conservation measure adopted by the Commission for the Conservation of Antarctic Marine Living Resources ("CCAMLR" or "Commission"), the "arbitrary and capricious" clause of 5 U.S.C. § 706(2)(A) governs review of NMFS's determination. However, even if the Court considers the "contrary to law" clause of that provision controlling, NMFS should prevail because its decision reflects the best reading of CM 31-01, the binding conservation measure at issue.

Under the Administrative Procedure Act ("APA"), the Court may "hold unlawful and set aside agency action, findings, and conclusions" only if they are "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706(2)(A). In *Loper Bright Enterprises v. Raimondo*, the Supreme Court held "that courts, not agencies, will decide '*all* relevant questions of law' arising on review of agency action, . . . and set aside any such action inconsistent with the law as they interpret it." 603 U.S. 369, 392–93 (2024) (citing 5 U.S.C. § 706). Therefore, if the Court encounters any relevant questions of law in reviewing an agency action, the Court will decide them. *Id.*; *see* Defs.' Reply, D.E. 84 at 2. "In exercising such judgment, though, courts may—as they have from the start—seek aid from the interpretations of those responsible for implementing particular statutes." *Loper Bright*, 603 U.S. at 394. "Such interpretations 'constitute a body of experience and informed judgment to which courts and litigants may properly resort for guidance' consistent with the APA." *Id.* (quoting *Skidmore v. Swift & Co.*, 323 U.S. 134, 140 (1944)). Moreover, *Loper Bright* did not overturn the APA standard of review that applies to an agency's weighing of the facts before it. *See id.* at 392 ("Section 706 *does* mandate that judicial review of agency policymaking and factfinding be deferential.").

Here, the Antarctic Marine Living Resources Act ("AMLRCA") and its regulations forbid the United States from importing a shipment of toothfish if that toothfish was harvested in violation of any CCAMLR conservation measure in force with respect to the United States. *See* 16 U.S.C. § 2435(3) (statute prohibiting the United States from importing any Antarctic marine living resource "harvested in violation of a conservation measure in force with respect to the United States pursuant to [A]rticle IX of the Convention" on the Conservation of Antarctic Marine Living Resources ("Convention")); 50 C.F.R. § 300.105(a) (regulation requiring a NMFS-issued preapproval certificate to import any shipment of frozen toothfish into the United States); 50 C.F.R. § 300.105(h)(2) (2019) (regulation barring NMFS from issuing a preapproval certificate to import any toothfish shipment "[d]etermined to have been harvested or transshipped in contravention of any CCAMLR Conservation Measure in force at the time of harvest or transshipment"); CM 10-05 ¶ 13 (CCAMLR conservation measure barring a Contracting Party to the Convention from importing a shipment of toothfish if it determines that the toothfish was "not harvested in a manner consistent with CCAMLR conservation measures"). In accordance with AMLRCA and its regulations, NMFS denied Plaintiff's application for a preapproval certificate because NMFS determined based on the information before it that the toothfish proposed for import was harvested in contravention of a CCAMLR conservation measure in force with respect to the United States, CM 31-01. *See* AR000086.

Both CM 10-05 and the regulations required NMFS to determine whether Plaintiff's toothfish shipment was harvested in contravention of CM 31-01. In other words, this case presents an as-applied challenge to the meaning of CM 31-01, and the fundamental question is whether NMFS's determination that Plaintiff's toothfish shipment *was* harvested in contravention of CM 31-01 was arbitrary and capricious.

The text of CM 31-01 requires the Commission to establish necessary catch limits or equivalent measures for fisheries permitted in Subarea 48.3 for each fishing season. *See* Defs.' Br., D.E. 75 at 13; Defs.' Opp'n, D.E. 79 at 5. NMFS rationally determined that Plaintiff's toothfish shipment was harvested from Subarea 48.3 in contravention of CM 31-01 because the Commission failed to establish a necessary catch limit or equivalent measure for toothfish in Subarea 48.3 for the 2021/22 fishing season. *See* Defs.' Br. at 11–20; Defs.' Opp'n at 3–19; Defs.' Reply at 2–7. Apart from reading the text of CM 31-01 in the context of the Convention and the Commission's history of adopting a catch limit for the toothfish fishery in Subarea 48.3

from 1990 to 2021, NMFS also took into account the Commission's consideration of the proposed CM 41-02 containing catch limits for the toothfish fishery in Subarea 48.3 that were based on the advice of the Scientific Committee, as well as the statements of Commission Members in CCAMLR's Report of the Fortieth Meeting of the Commission ("Fortieth Meeting Report"). These facts support NMFS's determination that the shipment of toothfish had been harvested in contravention of CM 31-01 because the Commission did not authorize the harvest of that species in Subarea 48.3 for the 2021/22 fishing season by adopting a necessary catch limit or equivalent measure.[1] *See* AR000084; *id.* n.6 (citing Fortieth Meeting Report ¶¶ 6.18–6.22, 6.26–6.32, 6.35); *id.* n.7 (quoting Fortieth Meeting Report ¶¶ 6.22, 6.28, 6.30); *see also* Defs.' Br. at 15, 20; Defs.' Opp'n at 8–11; Defs.' Reply at 3–7.

Accordingly, NMFS's "[d]enial of [Plaintiff's] application is consistent with the AMLRCA regulations and U.S. obligations under the CCAMLR Catch Documentation Scheme (CM 10-05) which prohibits the importation of toothfish harvested in a manner inconsistent with CCAMLR conservation measures." AR000086. NMFS's denial also aligns with the Convention's sole objective—conservation of Antarctic marine living resources—and the conservation principles set forth in Article II, as well as the Commission's duty to give effect to the objective and principles by adopting conservation measures, including catch limits, for fisheries in the Convention area based on the best scientific evidence available. *See* Defs.' Br. at 14–15; Defs.' Opp'n at 3–8; Defs.' Reply at 8–9. NMFS's determination that the toothfish was harvested in contravention of CM 31-01 is rational, fully supported by the record in this case, *and* in accordance with the law, and this Court should uphold it.

To the extent that the Court views the issue of whether the toothfish in question was harvested in contravention of CM 31-01 as solely a question of law, NMFS's reading of CM 31-

---

[1] At the hearing, Plaintiff's counsel referred to the United Kingdom's sovereignty and sovereign rights with respect to South Georgia and the South Sandwich Islands and their surrounding waters. *See* Arg. Tr., D.E. 108 at 17–18, 52–54. But as counsel for the United States mentioned at the hearing, *see id.* at 36–37, the territory in question is subject to a long-standing dispute between two foreign sovereigns: the United Kingdom and Argentina. The United States takes no position on that territorial dispute, and the matter raises sensitive foreign policy concerns. *See* AR000084 ("Subarea 48.3 includes waters around South Georgia that are claimed by both the United Kingdom and Argentina. The United States takes no position on these competing territorial claims."); *see also id.* n.3 (citing CCAMLR, Report of the Fifteenth Meeting of the Commission, 1996, ¶ 13.27).

3

01 not only is the best reading of the text but also is persuasive given NMFS's expertise in fisheries conservation and management and informed judgment with respect to CCAMLR and the Convention. Defs.' Opp'n at 10–11; *see Org. of Pro. Aviculturists, Inc. v. U.S. Fish & Wildlife Serv.*, No. 23-11984, 2025 WL 807958, at *10 (11th Cir. Mar. 14, 2025) (finding agency's "consistent interpretation" of a statute, which aligned with the best reading of the statutory text, "persuasive" (citing *Loper Bright*, 603 U.S. 369)). NMFS has expertise in fisheries conservation and management at the national and international level, as well as decades of experience working within CCAMLR to achieve the Convention's conservation objective, including with respect to the toothfish fishery in Subarea 48.3. *See Collins v. Nat'l Transp. Safety Bd.*, 351 F.3d 1246, 1253 (D.C. Cir. 2003) (finding Coast Guard's interpretation of an obligation under a treaty persuasive "given the Coast Guard's expertise both in maritime safety and in deciding the most efficient way to administer its licensing and discipline procedures"); *Willie R. Etheridge Seafood Co. v. Pritzker*, No. 2:14-CV-73-BO, 2016 WL 1126014, at *1 (E.D.N.C. Mar. 21, 2016) (noting that NMFS manages Atlantic highly migratory fish in part under the Atlantic Tunas Convention Act, which "authorizes NMFS to promulgate regulations which carry out the binding recommendations of the International Commission for the Conservation of Atlantic Tunas" (citing Conservation of Atlantic Tunas Convention, May 14, 1966, 20 U.S.T. 2887)). NMFS's "body of experience and informed judgment" renders its reading of CM 31-01 persuasive. *Skidmore*, 323 U.S. at 140.

## II.     Standing, Mootness, and Request for Declaratory Relief

In response to the Court's inquiries about its jurisdiction, NMFS addresses (1) whether Plaintiff has standing for its APA claim, (2) whether that claim is now moot, and (3) whether Plaintiff has standing to seek declaratory relief.

Plaintiff has Article III standing if it (1) suffered an injury in fact that is (2) fairly traceable to Defendants' action and (3) redressable by a favorable decision when Plaintiff filed its Complaint in the U.S. Court of International Trade ("CIT") on October 12, 2022. *A&M Gerber Chiropractic LLC v. GEICO Gen. Ins. Co.*, 925 F.3d 1205, 1212 (11th Cir. 2019) ("Article III standing must be determined as of the time that the plaintiff's complaint is filed."). As the party invoking federal jurisdiction, Plaintiff bears the burden of establishing these elements by setting forth specific facts in an affidavit or through other evidence. *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 561 (1992). Here, Plaintiff asserts that it (1) was unable to import a

shipment of toothfish into the United States (2) because NMFS denied Plaintiff's application for a pre-approval certificate to import that shipment of toothfish, and (3) that the Court could redress the harm by "declaring that the Service's denial was not in accordance with law." Pl.'s Reply, D.E. 86 at 1–3.

A review of the timeline of events helps situate the question of standing as this Court reviews the issue in March 2025. The fishing vessel the *Nordic Prince* harvested toothfish in Subarea 48.3 from June 3, 2022, to July 16, 2022. AR000057–58. On July 22, 2022, Argos Froyanes exported a shipment of that toothfish—which Southern Cross Seafoods then sought to import into the United States—from Port Stanley, Falkland Islands, to Port Everglades, Florida. AR000058. Southern Cross Seafoods applied for a pre-approval certificate for that toothfish shipment on July 27, 2022, AR000056, and NMFS received the application on August 8, 2022, AR000083. NMFS issued its Denial Letter on September 15, 2022. AR000083–86.

On October 6, 2022, U.S. Customs and Border Protection detained the shipment of toothfish in Port Everglades, Florida, at NMFS's request.[2] *See* Ex. 1, Decl. of Heather Nicotri ("Nicotri Decl.") ¶ 3; *id.*, Ex. A (Notice of Detention). Plaintiff filed its Complaint in the CIT on October 12, 2022. *See S. Cross Seafoods, LLC, v. United States*, No. 1:22-cv-00299, Compl., D.E. 6 (Ct. Int'l Trade Oct. 12, 2022). Then, on October 13, 2022, NMFS informed Southern Cross Seafoods that NMFS would be seizing the fish and issued Southern Cross Seafoods a Notice of Seizure. *See* Nicotri Decl. ¶ 5; *id.*, Ex. C (October 15, 2022, Letter from Daniel Thomas and Signed Notice of Seizure). On or about October 17, 2022, Southern Cross Seafoods abandoned its interest in the toothfish shipment. *See* Nicotri Decl. ¶ 5; *id.*, Ex. C.

---

[2] As these and the following facts about the seizure and disposition of the toothfish shipment are post-decisional, they are not part of the administrative record. NMFS has provided the Declaration of NMFS Office of Law Enforcement Special Agent Heather Nicotri attesting to these facts along with supporting documentation. *See* Ex. 1. The Court is not limited to the administrative record in resolving jurisdictional issues such as standing and mootness, or with respect to remedy. *See, e.g.*, *Lujan*, 504 U.S. at 563–65 (discussing affidavits in assessing plaintiff's standing); *Health Freedom Def. Fund v. President of the United States*, 71 F.4th 888, 891 (11th Cir. 2023) ("look[ing] at the events at the present time, not at the time the complaint was filed" in evaluating whether an APA claim was moot (quoting *Djadju v. Vega*, 32 F.4th 1102, 1106 (11th Cir. 2022))); *Black Warrior Riverkeeper, Inc. v. U.S. Army Corps of Eng'rs*, 781 F.3d 1271, 1290–91 (11th Cir. 2015) (noting that, "[i]n deciding whether an agency's action should be remanded without vacatur, a court must balance the equities," which "may require additional fact-finding").

Finally, on or about November 15, 2022, NMFS donated the toothfish shipment in accordance with regulations at 15 C.F.R. § 904.509. *See* Nicotri Decl. ¶ 6; *id.*, Ex. D (Seized Property and Evidence Disposal Form).

Therefore, the specific toothfish shipment at issue does not exist and could no longer be imported into the United States, even if Plaintiff received a favorable decision in this case. While the government does not contest that Plaintiff had standing when it filed its Complaint in October 2022, the subsequent series of events may raise an issue of mootness. *See Soliman v. U.S. ex rel. INS*, 296 F.3d 1237, 1242 (11th Cir. 2002) ("If events that occur subsequent to the filing of a lawsuit or an appeal deprive the court of the ability to give the plaintiff or appellant meaningful relief, then the case is moot and must be dismissed." (quoting *Al Najjar v. Ashcroft*, 273 F.3d 1330, 1336 (11th Cir. 2001)).

Plaintiff's APA claim, which seeks to set aside NMFS's denial of Plaintiff's application for a pre-approval certificate to import that specific shipment of toothfish, is likely moot. *See id.* (finding plaintiff's request for release from detention pending removal from the United States moot after plaintiff was removed from the United States); *see also People's Party of Fla. v. Fla. Dep't of State, Div. of Elections*, No. 22-12451, 2022 WL 3657210, at *2 (11th Cir. Aug. 25, 2022) (finding plaintiff's request to enjoin enforcement of a requirement to be added to a ballot moot because, even if the Court enjoined enforcement of that requirement, plaintiff could not satisfy any of the unchallenged requirements after the qualification deadline had passed). "Any decision on the merits of a moot case or issue would be an impermissible advisory opinion." *Soliman*, 296 F.3d at 1242 (quoting *Fla. Ass'n of Rehab. Facilities, Inc. v. Fla. Dep't of Health & Rehab. Servs.*, 225 F.3d 1208, 1217 (11th Cir. 2002)).

Plaintiff has not argued to date that an exception to the mootness doctrine applies. If Plaintiff were to argue that NMFS's denial of its application for a pre-approval certificate is capable of repetition yet evading review, Plaintiff has not shown that "(1) there [is] a reasonable expectation or a demonstrated probability that the *same* controversy will recur involving the *same* complaining party, and (2) the challenged action is in its duration too short to be fully litigated prior to its cessation or expiration." *Id.* at 1242–43 (quoting *Sierra Club v. Martin,* 110 F.3d 1551, 1554 (11th Cir. 1997)).

On the first point, Plaintiff's declarant has asserted that "the Commission that adopts conservation measures under the Convention did not adopt a catch limit for Subarea 48.3 for the

seasons after the 2021/22 season and that there is no catch limit for Patagonian toothfish currently in place for Subarea 48.3," Decl. of Daniel Thomas ("Thomas Decl."), D.E. 86-1 ¶ 13, that "Southern Cross intends to import Patagonian toothfish from Subarea 48.3 into the United States," *id.* ¶ 15, and that "[i]f Southern Cross were to obtain relief in this case, it would apply for an International Fishery Trade Permit and preapproval certificates to import Patagonian toothfish from Subarea 48.3 into the United States," *id.* ¶ 17. But Plaintiff has not identified any toothfish that has been harvested in Subarea 48.3 in the absence of a catch limit that is currently in Plaintiff's possession or is even available for Plaintiff to seek to import.[3] Therefore, Plaintiff has not met its burden to demonstrate there is "a reasonable expectation or a demonstrated probability" that Plaintiff would reapply for a pre-approval certificate to import toothfish harvested in Subarea 48.3 in the absence of a necessary CCAMLR-adopted catch limit. *Cf. Conservation Force v. Salazar*, 715 F. Supp. 2d 99, 106 (D.D.C. 2010) (in applying voluntary cessation exception to mootness doctrine, finding no reasonable expectation that the alleged violation will recur against the plaintiff because "there is no indication in the record that the individual plaintiffs whose permit applications have now been processed will ever hunt the wood bison (or any other listed species) again, or that they will apply to import their trophies").

On the second point, Plaintiff has not demonstrated that its challenge to NMFS's denial could not have been fully litigated before its toothfish shipment was disposed of. Plaintiff decided to ship the toothfish without a certificate in hand; NMFS then seized the toothfish, which Plaintiff voluntarily abandoned. *See* Nicotri Decl. ¶¶ 5–6. The NMFS form that Plaintiff completed in submitting its application for a pre-approval certificate expressly states: "As the product is prohibited from release into the United States unless it has been pre-approved for import, dealers are cautioned to obtain the pre-approval certificate before engaging in

---

[3] According to the administrative record and the Thomas Declaration, Plaintiff Southern Cross Seafoods aims to import toothfish from Subarea 48.3 into the United States; indeed, Plaintiff applied for the pre-approval certificate that NMFS denied here. *See also* Pl.'s Statement of Material Facts, D.E. 74 ¶ 1; Defs.' Opp'n Statement of Material Facts, D.E. 80 ¶ 1. To clarify, nothing in the administrative record or the Thomas Declaration suggests that Plaintiff itself seeks to harvest toothfish or owns fishing vessels that seek to harvest toothfish from Subarea 48.3. In any event, this case is about whether NMFS correctly denied Plaintiff's application for pre-approval to *import* a toothfish shipment. NMFS does not have the authority to allow or prohibit fishing in Subarea 48.3, nor did it profess to prohibit fishing in Subarea 48.3. *See* Defs.' Reply at 7–8.

transactions to ship the product." Thomas Decl., Ex. D (D.E. 86-1 at 12) (AR000056). Had Plaintiff waited to ship the toothfish until after receiving NMFS's determination and held the toothfish in cold storage while this litigation challenging the Denial Letter was pending, Plaintiff's injury could be redressed by a favorable decision because the toothfish would still exist and could be imported.[4] Therefore, as presented, no exception to the mootness doctrine applies to save Plaintiff's APA claim.

"Moreover, the fact that [Plaintiff] seek[s] declaratory relief . . . does not save the case from mootness." *People's Party*, 2022 WL 3657210, at *2 ("An otherwise nonjusticiable case cannot be resurrected simply by seeking declaratory relief." (quoting *Gagliardi v. TJCV Land Tr.*, 889 F.3d 728, 735 (11th Cir. 2018))); *see Skelly Oil Co. v. Phillips Petroleum Co.*, 339 U.S. 667, 671 (1950) (explaining that the Declaratory Judgment Act "enlarged the range of remedies available in the federal courts but did not extend their jurisdiction"). "When a plaintiff cannot show that an injury is likely to occur immediately, the plaintiff does not have standing to seek prospective relief even if he has suffered a past injury." *Corbett v. Transp. Sec. Admin.*, 930 F.3d 1225, 1233 (11th Cir. 2019) (quoting *31 Foster Children v. Bush*, 329 F.3d 1255, 1265 (11th Cir. 2003)). "And even if the plaintiff shows immediacy, the injury must still be substantially likely to actually occur, meaning that the threatened future injury must pose a realistic danger and cannot be merely hypothetical or conjectural." *Id.* (citing *Fla. State Conference of N.A.A.C.P. v. Browning*, 522 F.3d 1153, 1161 (11th Cir. 2008)). As noted above, Plaintiff has not identified any toothfish that has been harvested in Subarea 48.3 in the absence of a catch limit that is currently in Plaintiff's possession or is even available for Plaintiff to seek to import. Therefore, Plaintiff has not shown that there is "sufficient immediacy and reality" to warrant declaratory relief. *People's Party*, 2022 WL 3657210, at *2 (dismissing appeal given plaintiff's "failure to identify even one candidate who would qualify for the November 2022 ballot but-for the 365-day rule").

No remedy is warranted. And the typical remedy available under the APA—remand to NMFS to reconsider its decision in light of the Court's opinion—is not available, since the

---

[4] Also, Plaintiff filed its Complaint in the wrong court, prolonging the litigation. The CIT did not have jurisdiction, as the government pointed out in the motion to dismiss that it filed in that court and that the CIT granted. *See S. Cross Seafoods, LLC, v. United States*, 668 F. Supp. 3d 1324 (Ct. Int'l Trade 2023).

8

toothfish in question no longer exists. *Cf. United States v. Schwarzbaum*, 24 F.4th 1355, 1365 (11th Cir. 2022) ("Remand is the appropriate remedy when an administrative agency makes an error of law, for it affords the agency an opportunity to receive and examine the evidence in light of the correct legal principle." (citation omitted)). Therefore, if the Court concludes that it has jurisdiction and finds an error in NMFS's decision, Defendants request that the Court limit any declaratory relief to the law and facts supporting NMFS's decision as set forth in the Denial Letter. *See* Defs.' Opp'n at 19–20.

For these reasons, the Court should grant Defendants' motion for summary judgment and dismiss Plaintiff's claims.

Dated: March 24, 2025

Respectfully submitted,

ADAM R.F. GUSTAFSON
Acting Assistant Attorney General
U.S. Department of Justice
Environment & Natural Resources Division
S. JAY GOVINDAN, Section Chief
MEREDITH L. FLAX, Deputy Section Chief

 */s/ Astrid Stuth Cevallos*
ASTRID STUTH CEVALLOS, Trial Attorney
FREDERICK H. TURNER, Senior Trial Attorney
Wildlife & Marine Resources Section
Benjamin Franklin Station, P.O. Box 7611
Washington, D.C. 20044-7611
Phone:   (202) 307-5751 (Cevallos)
         (202) 305-0641 (Turner)
Fax:     (202) 305-0275
Email:   Astrid.Cevallos@usdoj.gov
         Frederick.Turner@usdoj.gov

*Counsel for Defendants*